J-A27021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LINDA L. KILLIAN, ADMINISTRATOR FOR THE ESTATE OF ADRIENNE MARIE KILLIAN-MOSELEY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | No. 3584 EDA 2018 |
| SKYLINE HEALTH CARE, LLC, JS PENNSYLVANIA HEALTHCARE HOLDINGS, LLC, JOSEPH SCHWARTZ, FILLMORE CAPITAL PARTNERS, LLC, FILLMORE STRATEGIC INVESTORS, LLC; FILLMORE STRATEGIC MANAGEMENT, LLC; DRUMM MERGER CO., SUB, LLC, GGNSC HOLDINGS, LLC, GGNSC EQUITY HOLDINGS, LLC, GGNSC ADMINISTRATIVE SERVICES, LLC GGNSC CLINICAL SERVICES, LLC, GEARY PROPERTY HOLDINGS, LLC, GPH LANSDALE, L.P., GPH LANSDALE GP, LLC, GGNSC LANSDALE L.P., D/B/A GOLDEN LIVING CENTER-LANSDALE, GGNSC LANSDALE GP, LLC, LANSDALE CARE AND REHABILITATION CENTER, LLC, LILY SAHADY, NHA, AND JASON BARRY CUMELLO, NHA | : | |
| | : | |
| APPEAL OF: SKYLINE HEALTH CARE LLC, JS PENNSYLVANIA HEALTHCARE HOLDINGS, LLC, JOSEPH SCHWARTZ AND LANSDALE CARE AND REHABILITATION CENTER, LLC | : | |

Appeal from the Order Entered November 16, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-21847

J-A27021-19

BEFORE:  BOWES, J., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    Filed: April 15, 2020

Appellants, Skyline Health Care LLC, *et al.*, appeal from the order overruling their preliminary objections in the nature of a petition to compel arbitration in this nursing home neglect and abuse action brought by Appellee, Linda L. Killian ("Administrator"), the administrator for the estate of Adrienne Marie Killian-Moseley ("Decedent").  Upon careful review, we reverse and remand for further proceedings.

The trial court summarized the extensive factual and procedural history of this matter as follows:

> [D]ecedent lived at the facility, Golden Living Center — Lansdale, later called Lansdale Care and Rehabilitation Center [("the Facility")], from May 2015 to July 1, 2017.  (Second Am Compl. para. 1.)  She died on July 4, 2017.  (Second Am Compl. para. 2.)  During [Decedent's] residency at the facility, it changed hands among various Defendants, consequently the change in names, on or about February 1, 2017.  (Second Am Compl. para. 1.)

> [Administrator], sister of [D]ecedent and appointed administratrix of [D]ecedent's estate, claims that due to Defendants' negligence and derelictions during the course of [Decedent's] residency, [Decedent] "suffered preventable injuries, including falls, a head injury and concussion, right foot osteomyelitis, right foot MRSA infections, MRSA wound infections, several urinary tract infections, poor hygiene, severe pain, and ultimately death."  (Mem. Law Opp'n Prelim. Objs. Pl.'s Second Am Compl. Defs. Skyline Healthcare 2.)  [Administrator] holds many parties and entities, Defendants in this case, responsible for these alleged wrongs.

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

Defendants, grouped according to their representation by different counsel in this litigation, are as follows: (1) GGNSC Holdings, LLC, GGNSC Equity Holdings, LLC, GGNSC Administrative Services, LLC, GGNSC Clinical Services, LLC, GPH Lansdale, L.P., GPH Lansdale GP, LLC, GGNSC Lansdale L.P., doing business as Golden Living Center — Lansdale, GGNSC Lansdale GP, LLC, Jason Barry Cumello, NHA, and Lilly Sahady, NHA (collectively, the "Golden Living" Defendants); (2) Fillmore Capital Partners, LLC, Fillmore Strategic Investors, LLC, Fillmore Strategic Management, LLC, Drumm Merger Co. Sub, LLC, and Geary Property Holdings, LLC (collectively, the "Fillmore" Defendants); and (3) Skyline Health Care, LLC, JS Pennsylvania Healthcare Holdings, LLC, Joseph Schwartz, and Lansdale Care and Rehabilitation Center, LLC ([collectively, "Appellants"]). The "Golden Living" Defendants are the former owners/operators of the [Facility] as of the time [D]ecedent first entered it. The "Fillmore" Defendants are companies headquartered outside [of] Pennsylvania that are alleged by [Administrator] to have had some role in owning and/or operating the [F]acility and/or the corporate Golden Living Defendants while they controlled it locally. [Appellants] are corporations and an individual alleged to have taken over ownership and operation of the [F]acility in or around February 2017 when the prior owners transferred their interests to [Appellants]. [Appellants] are the ones currently before the honorable Superior Court seeking to compel [Administrator's] claims against them to arbitration.

[Administrator] instituted this suit in September 2017 by writ of summons, attempted and/or achieved service on all Defendants, and filed an initial complaint in December of that year. The three separately-represented groups of Defendants each preliminarily objected to the complaint, and [Administrator] filed an amended complaint pursuant to Pa.R.C.P. 1028(c)(1) ("A party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections. If a party has filed an amended pleading as of course, the preliminary objections to the original pleading shall be deemed moot."), as well as certificates of merit under Pa.R.C.P. 1042.3 for each Defendant. Each group of Defendants again preliminarily objected, and [Administrator] filed a second amended complaint.

At this point, the Golden Living Defendants stipulated with [Administrator] to arbitrate their disputes pursuant to an arbitration agreement [("the Agreement")] between the decedent

- 3 -

and "Golden Living Center" (Golden Living Defs.' Prelim. Objs. Pl.'s Am. Compl. Ex. B) dating from at or near the time [D]ecedent entered the [F]acility in May 2015; this stipulation was approved and filed as an order of the [c]ourt. In accordance with Pennsylvania's Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7304(d), the stipulation and order stayed [Administrator's] claims in [c]ourt against the Golden Living Defendants pending completion of the arbitration.

The other two groups of Defendants again preliminarily objected to the second amended complaint. [Administrator] filed timely responses opposing each set of preliminary objections. This [c]ourt overruled each set of preliminary objections in orders entered November 16, 2018.

The Fillmore Defendants' preliminary objections had sought to dismiss [Appellee's] claims, as against the Fillmore Defendants, all out-of-state parties, based on "lack of jurisdiction over ... the[ir] person[s]," Pa.R.C.P. 1028(a)(1). For the next few months after the filing of these objections and the response, the Fillmore Defendants and [Administrator] went back and forth filing replies, sur-replies, and notices of supplemental authority on the jurisdictional issue. After the [c]ourt overruled the jurisdictional objections, the Fillmore Defendants filed a motion asking the [c]ourt to amend its order to state, under Pa.R.A.P. 311(b)(2), "that a substantial issue of ... jurisdiction is presented," to allow for an interlocutory appeal as of right to the Superior Court under that rule. This [c]ourt denied the motion, and the Fillmore Defendants filed a petition for review in the Superior Court, which that Court also denied. *Killian v. Skyline Health Care, LLC*, No. 143 EDM 2018 (Pa. Super. Ct. Feb. 25, 2019).

[Appellants] whose objections had raised, as stated, [the Agreement], but also had pursued several other attacks on the second amended complaint in the nature of demurrers, filed this appeal directly to the Superior Court from the order overruling the objections, invoking the jurisdictional authority of 42 Pa.C.S. § 7320(a)(1) ("An appeal maybe taken from: (1) A court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration)."), and Pa.R.A.P. 311(a)(8) ("An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from: ... [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties."). ...

In this interlocutory appeal, only the question of whether this [c]ourt properly denied the preliminary objection going to arbitration is at issue; any other issues the preliminary objections raised are not. ...

[Appellants'] notice of appeal also cited Pa.R.A.P. 1701(a), "Except as otherwise prescribed by these rules, after an appeal is taken ... the trial court ... may no longer proceed further in the matter." However, under an explicit exception to this rule,

> Where only a particular item, claim[,] or assessment adjudged in the matter is involved in an appeal ... the appeal ... shall operate to prevent the trial court ... from proceeding further with only such item, claim[,] or assessment, unless otherwise ordered by the trial court ... or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

Pa.R.A.P. 1701(c); *cf*. 42 Pa.C.S. § 7304(d) ("An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section. If the issue allegedly subject to arbitration is severable, the stay of the court action or proceeding may be made with respect to the severable issue only." (emphasis added)).

Thus[, Appellants'] appeal did not itself stay this action from proceeding among other parties. Indeed, the Fillmore Defendants proceeded to comply with this [c]ourt's order overruling their preliminary objections by filing an answer to the second amended complaint. However, [Appellants] also filed a motion for a stay as to all claims and parties, and this [c]ourt granted that motion as unopposed on January 14, 2019. This stay presumably would not apply to the Golden Living Defendants' *arbitration* [which Administrator] stipulated to earlier, though the order adopting the stipulation had already stayed proceedings *in this* [c]ourt with regard to those Defendants, pending completion of the arbitration.

Trial Court Opinion, 6/7/19, at 1-6 (emphasis in original). The trial court did not direct Appellants to file a Pa.R.A.P. 1925(b) statement. The trial court complied with Pa.R.A.P. 1925(a).

Appellants present the following issues for our review:

1. Whether the trial court erred by overruling [Appellants']
preliminary objections and failing to order binding arbitration of
the claims brought on behalf of the Estate in accordance with the
terms of [the Agreement], as there is a valid agreement to
arbitrate executed by the Resident, and the [Administrator's]
claims arise fall squarely within the Agreement's scope?

2. Whether the trial court erred by finding that [Appellants]
presented insufficient factual or legal justification to enforce [the
Agreement], as the evidence established the direct transfer of
ownership to successor owners [Appellants], who were the
Facility's "affiliates," "successors" and/or "assigns," the
Agreement applied to any and all disputes relating to the
Resident's stay at this facility, the parties intended that the
Agreement remained in effect unless revoked, and there was a
[sic] "obvious and close nexus" between [Appellants] and both the
parties and the Agreement?

3. Whether, although not reached by the trial court,
[Administrator] failed to sustain her burden of establishing
meritorious contractual defenses to the validity or enforceability
of [the Agreement], and [the Agreement] is valid and enforceable
on the part of [Appellants]?

Appellants' Brief at 5-6.

Before addressing Appellants' claims, we first must determine whether

their appeal is properly before this Court. Generally, only final orders are

appealable. Pa.R.A.P. 341. Final orders are defined as orders that dispose of

all claims and all parties. *Id*. Ordinarily, an order of the trial court overruling

a party's preliminary objections is interlocutory and not appealable as of right.

*Callan v. Oxford Land Development Inc.*, 858 A.2d 1229, 1232 (Pa. Super.

2004). There is, however, a narrow exception to this rule for cases in which

the appeal is taken from an order denying a petition to compel arbitration.[1]

*Id*.; Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7320(a). Here, the trial court's order denied Appellants' request to compel arbitration. As such, we conclude that the order is immediately appealable, and we will proceed to address Appellants' claims.

In their first and second issues, Appellants argue that the trial court erred in overruling their preliminary objections and failing to order arbitration. Appellants' Brief at 22-52. Appellants contend that there was a valid arbitration agreement and that Administrator's claims fall within the scope of the Agreement. *Id*. at 22-28. Appellants allege that they presented sufficient justification to enforce the Agreement. *Id*. at 28-52. Specifically, Appellants claim that the parties intended for the Agreement to apply to the facility and its affiliates, and successors and assigns, and the evidence established Appellants were successor owners. *Id*. at 30-40. Appellants assert that the intention for the Agreement to remain in effect through any transfer in ownership is manifested in the language that it governs all claims for negligence or malpractice arising out of Decedent's residence at the Facility. *Id*. at 40-43. Further, Appellants claim that, although they are non-signatories to the Agreement, they may enforce the Agreement because there

---

[1] A party may appeal directly from the order denying a preliminary objection invoking an arbitration agreement; a separate petition to compel arbitration is not required. ***Stewart v. GGNSC-Canonsburg, L.P.***, 9 A.3d 215, 218 (Pa. Super. 2010).

is an obvious and close nexus between Appellants and the parties. *Id*. at 43-51.

Our review of a claim that the trial court improperly denied an appellants' preliminary objection in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013). "Where a party to a civil action seeks to compel arbitration, a two-part test is employed." *Callan* 858 A.2d at 1233.

> First, the trial court must establish if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

*Id*. (citations omitted). The existence of an agreement and whether a dispute is within the scope of the agreement are questions of law, and an appellate court's review is plenary. *Keystone Tech. Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1227 (Pa. Super. 2003).

In interpreting an arbitration agreement, we are mindful that arbitration agreements must be strictly construed. *Callan*, 858 A.2d at 1233. In addition, "arbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists." *Levy v. Lenenberg*, 795 A.2d 419, 422-423 (Pa. Super. 2002)

(quoting ***Midomo Co., Inc. v. Presbyterian House. Dev. Co.***, 739 A.2d 180, 187 (Pa. Super. 1999)).  If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue and shall order the parties to proceed with arbitration if it finds for the moving party.  42 Pa.C.S. § 7304(a).  Otherwise, the application for arbitration shall be denied.  ***Id***.

In determining whether parties have agreed to arbitrate, we consider the following:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

***Highmark Inc.***, 785 A.2d at 98 (quoting ***Midomo Co. v. Presbyterian Housing Development Co.***, 739 A.2d 180, 190 (Pa. Super. 1999)).  "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding.  This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation."  ***Humberston v. Chevron U.S.A., Inc.***, 75 A.3d 504, 509-510 (Pa. Super. 2013).  There exists a well-established rule of construction and interpretation stating that words and phrases not defined in the contract "be given their plain and ordinary meaning whenever possible."  ***Toombs NJ Inc. v. The Aetna***

*Casualty & Surety Company*, 591 A.2d 304, 307 (Pa. Super. 1991). As we have stated, "[W]ords of common usage ... are to be construed in their natural, plain and ordinary sense ... and we may inform our understanding of these terms by considering their dictionary definitions." *Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1232 (Pa. Super. 2001) (quoting *Madison Const. Co. K Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

In addressing whether Appellants were entitled to compel arbitration, the trial court concluded the following:

> In attempting to carry their burden to establish an entitlement to compel arbitration, [Appellants] relied exclusively on the arbitration agreement [D]ecedent made with "Golden Living Center" when she entered the facility in May 2015. ([Appellants'] Prelim. Objs. Pl.'s Second Am. Compl. para. 3 & Ex. B.) But [Appellants], who had no interests or rights pertaining to the [F]acility until February 2017, when it changed hands under circumstances not explained or disclosed to the [c]ourt in [Appellants'] preliminary objections, presented insufficient factual or legal justification to require the [c]ourt to enforce [the Agreement] against [Administrator] on [Appellants'] behalf.

Trial Court Opinion, 6/7/19, at 8.

In reaching this determination, the trial court offered the following discussion:

> [Appellants'] preliminary objections cite no specific provision of [the Agreement], or any contract [Appellants] had with the Golden Living Defendants or any other party, giving [Appellants] a right to compel arbitration under [the Agreement]. Though the preliminary objections fail to cite the provision, [the Agreement], a preprinted form with the parties' names (Golden Living Center's and [D]ecedent's) handwritten in on blank spaces as "Facility" ... and "Resident" … respectively, states that, "The

- 10 -

term 'Facility' as used in this Agreement shall refer to the living center, its employees, agents, officers, directors, affiliates[,] and any parent or subsidiary of Facility[,] and its medical director acting in his or her capacity as medical director." … The [A]greement is silent as to corporate successors to ownership or operation of the "Facility."

* * *

In seeking to compel [Administrator] to arbitration with them[, Appellants] rely entirely on their purported status as successors to the Golden Living Defendants as operators of the nursing facility--though without commenting on how [Appellants] might under this theory be liable for any alleged derelictions the Golden Living Defendants committed before [Appellants] became involved with the [Facility]. More importantly, [Appellants] presented no competent evidence of their status as successors to the rights and liabilities of the "Golden Living Center." [Appellants'] preliminary objections advancing the argument [Appellants] were entitled to enforce the arbitration contract presented no contract with the Golden Living parties to show what, if any, the rights and liabilities transmitted with the change over in the facility might have been. Only [Administrator's] response offered proof of the change in ownership among [Appellants] and Golden Living Defendants, consisting merely of letters back and forth between the Department of Health and the old and new owners … without of course demonstrating any basis in these documents for [Appellants] to enforce [the Agreement] against [Administrator].

Trial Court Opinion, 6/7/19, at 8-9, 10-11 (citations omitted). We are constrained to disagree. Particularly, we cannot agree with the trial court's statement that "[t]he [A]greement is silent as to corporate successors to ownership or operation of the 'Facility.'" *Id*. at 8-9.

We note that the Agreement does not define the term "successor." However, as previously stated, "words of common usage … are to be construed in their natural, plain, and ordinary sense, and [a reviewing court] may inform

[its] understanding of these terms by considering their dictionary definitions." ***Municipality of Mt. Lebanon***, 778 A.2d at 1232. Accordingly, because "successor" is a word of common usage, consideration of its dictionary definitions is appropriate.

Particular to our review of the Agreement, we observe that Merriam-Webster defines the term "successor" as "one that follows." Merriam-Webster, http://www.merriamwebster.com/dictionary/successor. In addition, Black's Law Dictionary defines "successor" as "1. A person who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor. 2. A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary, 1569 (9th ed. 2009). Applying these definitions of the term "successor" to the evidence of record, this Court is left to conclude Appellants are the successors to Golden Living Defendants, thereby qualifying as parties to the Agreement.

Moreover, our review of the record reflects that on May 24, 2015, Decedent entered into the Agreement with Golden Living Defendants. Appellants' Preliminary Objections, Exhibit B, Agreement. Section I of the Agreement possesses the heading, "The Parties to This Agreement," and contains the following sentence: "It is the intent of the Parties that this Agreement shall **inure to the benefit of**, **bind**, **and survive them**, **their successors**, **and assigns**." ***Id***. at 1 (emphasis added). The record further

establishes that Golden Living Defendants were the owners of the Facility from the time Decedent was admitted on May 25, 2015, through February 1, 2017. Amended Complaint, 2/26/18, at 4 ¶ 1. The record also reveals that a change in ownership occurred at the Facility on February 1, 2017, at which point Appellants assumed ownership. *Id*. Additional evidence of this undisputed fact, in the form of a letter from the Pennsylvania Department of Health dated January 25, 2017, indicates that there was a change of ownership. The letter provides as follows:

> We have reviewed the Change of Ownership forms for [Golden Living Defendants] and have found them to be acceptable. The Department hereby acknowledges the change in ownership from [Golden Living Defendants] to [Appellants]. In conjunction we will acknowledge the facility's name changes upon notification of the completed transaction followed by the issuance of a new license to the facility.
>
> At the completion of the transaction, please notify the Department in writing with a letter of Confirmation of Sale from the buyer to the seller. This correspondence must be signed by the Chief Executive Officer of both [Golden Living Defendants] and [Appellants], and indicate the date of the transaction so that the facility's new license can be issued to reflect the change.

Response to Preliminary Objections, 3/28/18, Exhibit C, at 1. This fact is supported and confirmed by additional letters to the Pennsylvania Department of Health from Golden Living Defendants and from Appellants. Response to Preliminary Objections, 3/28/18, Exhibit C, at 2-3.

This evidence of record establishes that Golden Living Defendants, the signatory of the Agreement, were the owners of the Facility at the time the Agreement was executed. The record further establishes that on February 1,

2017, Appellants succeeded Golden Living Defendants as owners of the Facility. Hence, Appellants are successors under the Agreement.

By virtue of the language in the Agreement specifying that the Agreement "shall inure to the benefit of the parties' successors," we conclude that the trial court erred in determining that there was insufficient evidence to show Appellants were entitled to seek enforcement of the Agreement. Furthermore, having concluded that the trial court erred in its review in this matter, we are constrained to reverse the trial court's order overruling Appellants' preliminary objections. Consequently, having determined that Appellants qualify as successors, we must remand this matter to the trial court for completion of its review of the two-part test set forth in *Callan*, 858 A.2d at 1233. Accordingly, Administrator is entitled to review of contractual defenses to the validity of the Agreement. Further, if the trial court determines the Agreement is valid, it must ascertain if Administrator's dispute with Appellants falls within the scope of the Agreement.

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/20

- 14 -